SAN ANTONIO, U. & G. R. CO. et al. v. VIVIAN. (No. 5548.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 8, 1915.)

1. RECEIVERS ☞174 — ACTION AGAINST — LEAVE OF COURT.
  Absent permission of the federal court, which appointed him, a receiver of a railroad cannot, under the federal statute, be sued in a state court for an injury caused by the road before his appointment.
  [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 333–343; Dec. Dig. ☞174.]

2. CARRIERS ☞347 — INJURY TO PASSENGER ALIGHTING FROM MOVING TRAIN—CONTRIBUTORY NEGLIGENCE.
  That a passenger alights from a train moving slowly does not show contributory negligence per se, at least when done with the knowledge, assent and encouragement of the carrier's employés.
  [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. ☞347.]

3. CARRIERS ☞333—INJURY TO PASSENGER— ALIGHTING FROM MOVING TRAIN—CONTRIBUTORY NEGLIGENCE.
  Though a train is passing a passenger's station, yet for him to alight when it is going fast, the danger from which should have been obvious to him, is contributory negligence, absent a showing that the danger was not apparent to him, and that he was induced by an employé of the carrier to do so.
  [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1385, 1386, 1388–1397; Dec. Dig. ☞333.]

4. CARRIERS ☞321—DUTY OF PASSENGER— INSTRUCTION.
  An instruction as to the duty of a carrier to a passenger can be given without the use of the word "possible," as in the expression "the highest degree of care possible."
  [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1336, 1343; Dec. Dig. ☞321.]

5. TRIAL ☞304—MISCONDUCT OF JURY—DISCUSSING FEES OF PLAINTIFF'S ATTORNEY.
  It is misconduct of the jury, in a personal injury case, to discuss or consider the fees of plaintiff's attorney.
  [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 725–727; Dec. Dig. ☞304.]

Appeal from District Court, La Salle County; J. F. Mullally, Judge.

Action by Lafayette Vivian against the San Antonio, Uvalde & Gulf Railroad Company and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Williams & Hartman, of San Antonio, for appellants. Magus Smith, of Pearsall, and Covey C. Thomas, of Cotulla, for appellee.

FLY, C. J. This is a suit for damages alleged to have accrued to appellee on account of personal injuries inflicted through the negligence of the railroad company. The suit was instituted against the railroad company and Duval West, its receiver. A trial by jury resulted in a verdict and judgment against appellants in favor of appellee in the sum of $10,000.

[1] It was alleged by appellee that the receiver had been appointed since the institution of the suit, by the United States District Court; that his appointment occurred after the injuries were inflicted, and there was no allegation that permission had been obtained to sue the receiver. The trial court erred in not sustaining the general demurrer of the receiver to the petition, as no cause of action could lie against him under the federal statute. Morse v. Tackaberry, 134 S. W. 273; Andrews v. King, 170 S. W. 862.

[2, 3] The petition alleges that appellee was a passenger on a freight train, on his way from Gardendale to Crystal City; that it was at night; that when the train neared Crystal City some employé of appellant, as the railroad company will be designated, said to appellee, "We have got here," and appellee attempted to get off the train, which was moving slowly, and fell and was injured; that the train was directly in front of the station when appellee attempted to alight; that no effort was made by any employé to warn appellee, who could not see well, of the danger of getting off, and no one offered to assist him. Under the facts pleaded, the general demurrer was properly overruled by the court. The fact that a passenger alights from a train moving slowly cannot be held to show negligence per se, especially when it is done with the knowledge of the employés

and with their assent and encouragement. The train was moving slowly as it passed the station, and appellee was informed that he had reached his destination. There was an implied invitation to appellee, as he says he thought, to alight from the train. The facts alleged in this case distinguish it from the cases cited by appellant. In the case of Railway v. Wallace, 139 S. W. 1052, a passenger jumped from a train while running at the rate of 20 miles an hour, after it had passed the point of destination of the passenger, and it was properly held that the facts made a clear case of contributory negligence.

In the case of Railway v. Leslie, 57 Tex. 83, a passenger jumped from a rapidly moving train, and it was held that the facts made a clear case of contributory negligence on the part of the passenger. To the same effect are the cited cases of Railway v. Bigham, 90 Tex. 223, 38 S. W. 162; Railway v. Rowland, 90 Tex. 365, 38 S. W. 756, and Railway v. Highnote, 99 Tex. 23, 86 S. W. 923. In all of the cases it was held that the facts clearly showed contributory negligence, and not that the mere fact of a passenger alighting from a moving train was negligence as a matter of law. The allegations in the petition did not show contributory negligence as a matter of law, and the petition was not subject to general demurrer.

The facts, however, do not make out a case of negligence against appellant as alleged. It is alleged that appellee was old and partially blind; that, relying upon the statement of the conductor, or the employé who took up his ticket, appellee thought that he should alight; that he was not assisted by any one in alighting; that his age and partial blindness should have been known to appellant; and that he ought to have been told that the train could not or would not be stopped.

There was no testimony tending to show that any employé knew the infirm condition of appellee, for, although 66 years of age, the burdens of those years should not, in the absence of sickness, have rendered him feeble, and indeed the evidence failed to show that he was infirm and, although he said his eyesight was impaired, he could see well enough to cultivate flowers and take care of the yard. He was in good health before the accident. He got on the train unassisted, and when he wanted to get off, he walked promptly to the door. He did not testify that his defective vision prevented him from seeing his way, and he had no difficulty in recognizing persons with whom he came in contact. He merely claimed that his "eyesight wasn't very good at that time." He seemed to be able at night to distinguish persons and keep up with matters happening around him. The railroad company, under the facts, owed him no higher care than that owed to any ordinary passenger. A blind or deaf person is bound to exercise the same, if not a greater, degree of care for his safety as others not so afflicted, and it has been held that more care in some respects is required of them than of those in the full possession of their faculties. Railway v. Garcia, 75 Tex. 583, 13 S. W. 223. Unless the infirmities of a passenger are known to the employés of the carrier, their conduct toward him will be tested by the same rules as it would in the case of a normal human being. Elliott, Railroads, § 1172.

There was no invitation to appellee to leave the train, unless one could be implied from the declaration, made by some one, that the point of destination had been reached. There was no invitation conveyed by the words to leave the train, but if there had been such an invitation, it would not give permission to the passenger to utterly disregard the rules of safety and get off a train going as fast as the one on which appellee was riding. The danger of getting off should have been obvious to appellee, and his very infirmities should have warned him against such a course. No one, however, told appellee to leave the moving train, and although it may have been passing the station, appellee should have waited. As said in the case of Railway v. Aspell, 23 Pa. 147, 62 Am. Dec. 323, and commended in Railway v. Highnote, herein cited:

"From these principles, it follows very clearly that if a passenger is negligently carried beyond the station where he intended to stop, and where he had a right to be let off, he can recover compensation for the inconvenience, the loss of time, and the labor of traveling back, because these are the direct consequences of the wrong done to him. But if he is foolhardy enough to jump off without waiting for the train to stop, he does it at his own risk, because this is gross imprudence, for which he can blame nobody but himself. If there be any man who does not know that such leaps are extremely dangerous, especially * * * in the dark, his friends should see that he does not travel by railroad."

As said by Judge Brown in the Highnote Case:

"The general rule is that a passenger who leaves a train while in motion takes the risk of injury."

There are exceptions to the rule, one of which is where the passenger is induced to leave a moving train by an employé when the danger of such leaving was not apparent to the passenger. While the allegations may have brought the case of appellee within the exception, the evidence utterly fails so to do. Railway v. Guess, 154 S. W. 1060.

[4] The charge complained of in the twelfth assignment of error is copied bodily from an opinion of the Court of Civil Appeals of the Fifth District in the case of Railway v. Woodall, 159 S. W. 1012, which was approved by that court, and while it may be in conflict with the opinion in the case of Railway v. Welch, 86 Tex. 203, 24 S. W. 390, herein cited, we deem it unnecessary to attempt a reconciliation of the two opinions. In case of another trial the court can give the law without antagonizing either of the decisions. We will not anticipate the repetition of a charge on the subject open to at-

tack from a use of the word "possible." A jury can be instructed as to the duty of a carrier to a passenger without the assistance of the word. There can be no objection to the charge on the care of the carrier to the passenger, copied in Railway v. Halloren, 53 Tex. 53, 37 Am. Rep. 744, which is approved as the correct rule of liability in the Welch Case.

[5] The attorney's fees of a plaintiff should never be discussed nor considered by a jury or jurors while considering their verdict in a death or personal injury case. Such fees can form no part of the damages, and it is reprehensible for a jury, regardless of the evidence, to allow such fees to enter into and become a part of the verdict, as was done in this case. There is a full discussion of like misconduct on the part of a jury by this court in the case of San Antonio Traction Company v. Cassanova, 154 S. W. 1190, and the judgment was reversed and the cause remanded for that misconduct alone. The same action has been taken since by the Court of Civil Appeals of the Second District in Railway v. McKinnell, 173 S. W. 937.

Every matter which probably might arise on another trial has been considered, and, for the errors herein indicated, the judgment is reversed and the cause remanded.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes